UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

PERFORMANCE INSURANCE COMPANY SPC                    Chapter 15

    Debtor in a Foreign Proceeding.                    Case No.: 21-12609-AJC
_____/

### MOTION TO AUTHORIZE DISTRIBUTION OF ESTATE FUNDS
### HELD IN THE UNITED STATES TO THE CAYMAN ISLANDS

Kenneth Krys and Neil Dempsey (the "Foreign Representatives"), the Official Joint Liquidators of Performance Insurance Company SPC (the "SPC") and ten of its twelve segregated portfolios[1] (collectively, the "Debtor"), file this *Motion to Authorize Distribution of Estate Funds Held in the United States to The Cayman Islands* (the "Motion"), to authorize the Foreign Representatives to repatriate the funds held in the U.S. bank accounts of the Debtor pertaining to its segregated portfolio Omega Insurance Company SP ("Omega SP") to its corresponding bank accounts in the Cayman Islands so they can be administered in the Debtor's foreign main proceeding. In support of their Motion, the Foreign Representatives state as follows:

---

[1] The Debtor's segregated portfolios are: (i) Bottini Insurance SP; (ii) Gen 1 Insurance Company SP; (iii) Goldenstar Holdings Company SP; (iv) Greystone Insurance SP; (v) Hudson York Insurance Company SP; (vi) Omega Insurance Company SP; (vii) Performance 5 SP; (viii) Prewett Insurance Company SP; (ix) Smart Insure SP; (x) SSS Insurance SP; (xi) Sustainable Insurance Company SP; and (xii) Triangle RGK SP. These twelve segregated portfolios are hereinafter referred to as the "Segregated Portfolios." The Foreign Representatives are the Official Joint Liquidators for all segregated portfolios but not for Bottini Insurance SP and SSS Insurance SP.

1

## RELEVANT FACTS

### I. The Debtor and the Kentucky Litigation

1. The Debtor is a segregated portfolio company incorporated in the Cayman Islands operating in the captive insurance industry through its 12 Segregated Portfolios. D.E. 2.

2. The Debtor is a defendant in a lawsuit commenced in 2019 in the United States District Court for the Western District of Kentucky, styled as *Lexington Insurance Co., et al v. The Ambassador Group LLC, et al*, Case No. 3:20-CV-00330-BJB-LLK (the "Kentucky Action").

3. Among other things, the Kentucky Action sought injunctive relief against the SPC and some of its segregated portfolios. In connection with that relief, the Kentucky court entered two consent orders (the "Consent Orders"), one on May 14, 2020 and the other on October 13, 2020. Part of the Consent Orders involves certain of the Debtor's segregated portfolios ("Consent Order SPs"), including Omega SP, and the maintenance and use of the accounts held by or for the benefit of the Consent Order SPs ("Consent Order Accounts"). Among other things, the Consent Orders provide (in paragraph 5 of each order) that Performance "shall not transfer, diminish or dissipate" funds in the Consent Order Accounts "other than to adjust, pay or settle claims made by policyholders and certificate holders in the normal course."

### II. The Debtor's Cayman Islands Liquidation

4. Due to the exposure to liability in litigation and its inability to generate income after the issuance of a desist order against it by the Cayman Islands Monetary Authority, the Debtor's directors and its sole shareholder entered resolutions to wind up the Debtor on February 26, 2021, thereby commencing its voluntary liquidation (the "Debtor's Cayman Liquidation"). D.E. 2. The Debtor's Cayman Liquidation became subject to the supervision of the Grand Court of the Cayman Islands (the "Cayman Court") on April 7, 2021. D.E. 18.

5. The plaintiffs in the Kentucky litigation have filed proofs of debt with the foreign representatives in the Debtor's Cayman Liquidation.

### III. The Recognition of the Debtor's Insolvency Proceeding Under Chapter 15

6. On March 19, 2021, the Foreign Representatives filed a petition and motion for recognition of the Debtor's Cayman Liquidation under Chapter 15 of the Bankruptcy Code. D.E. 1 & 2.

7. On April 15, 2021, the Court entered its *Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code and Granting Additional Relief* (the "Recognition Order"). D.E. 17. The Recognition Order recognized the Debtor's court-supervised liquidation pending in the Cayman Islands as a foreign main proceeding and the Foreign Representatives as foreign representatives. D.E. 17.

8. Among other things, the Recognition Order entrusts the Foreign Representatives with "the full administration and realization of all or part of the Debtor's bankruptcy estate and assets within the territorial jurisdiction of the United States." D.E. 17, at ¶ 3.

9. The Recognition Order also institutes the automatic stay under section 362 of the Bankruptcy Code, and specifically provides as follows:

    a. "All persons and entities are stayed from commencing or ***continuing any action or proceeding*** concerning the assets, rights, obligations or liabilities, of the Debtor or the Debtor's bankruptcy estate, located in the United States." D.E. 17, at ¶ 6 (emphasis added).

    b. "All persons and entities are stayed from executing against the assets of the Debtor or the Debtor's bankruptcy estate located in the United States." D.E. 17, ¶ 7.

    c.    "All persons and entities are prohibited from transferring, encumbering or otherwise disposing of, *or exercising control over* any assets of the Debtor or the Debtor's bankruptcy estate, located in the United States." D.E. 17, ¶ 8 (emphasis added).

10.    The Recognition Order also addresses the Consent Orders, and provides that the Foreign Representatives should not take any action inconsistent with the Consent Orders unless this Court granted leave to do so, as follows:

> 17.    Notwithstanding anything in this Order to the contrary, by agreement of the Foreign Representatives:
>
>     A.    For Consent Order Accounts that are located in the territorial jurisdiction of the United States of America, the Foreign Representatives shall not take any action that is inconsistent with the Kentucky Consent Orders in regard to such Consent Order Accounts, unless the Foreign Representatives have sought and received, after notice and hearing, *either consent of this Court to take such action or an adjudication from this Court that the Foreign Representatives may take such action notwithstanding the existence of the Kentucky Consent Orders*.
>
>     B.    For Consent Order Accounts that are located outside the territorial jurisdiction of the United States of America, the Foreign Representative shall not take any action that is inconsistent with the Kentucky Consent Orders in regard to such Consent Order Accounts unless the Foreign Representatives have sought and received, after notice and hearing, consent of the Court in the Foreign Main Proceeding to take such action.
>
>     For avoidance of doubt, nothing in this Order is intended or should be construed to (a) prevent the litigants in the Kentucky Litigation to seek further relief from the Foreign Main Proceeding, or from this Court regarding the Consent Order Accounts or the Kentucky Litigation including requesting relief from the automatic stay, (b) prevent the Foreign Representative from obtaining signatory authority or similar rights over any bank account(s) that comprise the Consent Order Accounts or to cause the transfer of funds in any of those bank accounts to another banking institution in the same territorial jurisdiction if necessary for the purpose of gaining control in accordance with the statutory obligations of the Foreign Representatives, (c) effectuate a waiver of the rights, remedies, and defenses of the litigants in the Kentucky Litigation or the Foreign Representative regarding the impact of the automatic stay on the Kentucky Consent Orders, or (d) prevent this Court from considering any rulings or adjudications made by the Court in the Foreign Main

        Proceeding with regard to the Consent Order Accounts or to communicate with such Court as permitted by law on such subject.

D.E. 17, ¶ 17 (emphasis added).[2]

### IV. The Novation Settlements

11. The stakeholders of the Debtor's segregated portfolios Gen 1 Insurance Company SP, Greystone Insurance SP, Prewett Insurance Company SP, Smart Insure SP, Triangle RGK SP, and Sustainable Insurance Company SP (the "Novated SPs") entered into settlement agreements whereby their respective obligations and liabilities would be assigned to other captive insurance companies. D.E. 50 & 53. The Cayman Court approved these settlements.

12. This Court granted the Foreign Representatives' motions to authorize the distribution of the Novated SPs assets in the United States to permit the Foreign Representatives to implement the settlement agreements. D.E. 51 & 54.

13. Though the settlements affected the Novated SPs, the settlements did not affect the Debtor's six other segregated portfolios, including Omega SP.

### V. The Cayman Remuneration Order

14. On August 24, 2022, the Grand Court of the Cayman Islands overseeing the Debtor's official liquidation entered an Order (the "Remuneration Order") approving the remuneration and expenses of the Foreign Representatives up to and including July 31, 2021, under Cayman Islands law with respect to their remuneration agreements as to the SPC and four of its segregated portfolios Goldenstar Holdings Company SP, Omega SP, Hudson York Insurance

---

[2] The entry of the Recognition Order and the additional relief granted under section 1521(1) & (2), stayed the enforceability of the Consent Orders as to the Consent Order SPs and the Consent Order Accounts. *See* 11 U.S.C. § 1520(a)(1) & 1521(a)(1) & (2); *In re C.W. Min. Co.*, No. 08-20105, 2008 WL 3539795, at *3 (Bankr. D. Utah Aug. 7, 2008) (enforcing automatic stay to prevent enforcement of prepetition injunction against the debtor).

Company SP, and Performance 5 SP. The "Remuneration Order" is attached hereto as **"Exhibit A"**.

15. The Remuneration Order further authorizes the Foreign Representatives to make an interim payment for 80% of their remuneration and 100% of their expenses, including legal fees, incurred from August 1, 2021 onwards. Ex. A, ¶ 5. The Remuneration Order further authorizes the Foreign Representatives "to make any applications in other court outside of the Cayman Islands in order to give effect to the approval and payment of the [Foreign Representatives] past and future remuneration and expenses in respect of the [Debtor] and the Subject SPs." Ex. A, ¶ 6.

## RELIEF REQUESTED AND BASIS FOR RELIEF

16. Pursuant to 11 U.S.C. §§ 1521(a)(7) & 1521(b), the Foreign Representatives request an order from the Court entrusting them with the distribution of the funds located in the accounts Omega SP in the United States (the "US Accounts") to the Cayman Islands to permit the Foreign Representatives to administer these funds in connection with the Debtor's Cayman Liquidation.

17. Pursuant to section 1521(a)(5), the Court has entrusted the Foreign Representatives with the "full administration or realization of all or part of the Debtor's bankruptcy estate and assets within the territorial jurisdiction of the United States." D.E. 17, at ¶ 3; *see* 11 U.S.C. § 1521(a)(5).

18. Under section 1521(b), the court may "entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative … provided that the court is satisfied that the interest of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b). "This alternative provision allows the debtor's estate to exit the United States for

distribution." *In re Agrokor d.d.*, 591 B.R. 163, 188 (Bankr. S.D.N.Y. 2018); *see In re British Am. Ins. Co.*, 488 B.R. 205, 225 (Bankr. S.D. Fla. 2013). This relief is conditioned, however, on whether the interests of U.S. creditors are "sufficiently protected." 11 U.S.C. § 1521(b). Additionally, any relief under section 1521(b) may only be granted "if the interests of creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

19. Accordingly, "a bankruptcy court must be satisfied that local creditors' interests are 'sufficiently protected' before allowing a foreign representative to distribute property in a foreign proceeding, and though not an express requirement, is not precluded from satisfying itself that foreign creditors are 'sufficiently protected' before allowing a foreign representative to distribute property in a foreign proceeding." *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776 (Bankr. S.D. Fla. 2012).

20. Courts consider the following three factors in determining whether a creditor is afforded "sufficient protection": (i) the just treatment of all holders of claims against the bankruptcy estate; (ii) the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding; and (iii) the distribution of proceeds of the foreign estate substantially in accordance with the order prescribed by U.S. law. *In re Markus*, 610 B.R. 64, 76 (Bankr. S.D.N.Y. 2019), *aff'd*, 620 B.R. 31 (S.D.N.Y. 2020).

21. There is no doubt that the Debtor's U.S. creditors are afforded "sufficient protection." The Debtor's estate is governed by the Cayman Islands Companies Act (the "Companies Act"), which is applicable to all company insolvencies in the Cayman Islands. Accordingly, the assets of the Debtor and its segregated portfolios are subject to the Foreign Representatives' exclusive control for the purpose of their liquidations. Companies Act, Sec. 110. The Companies Act affords creditors the right to file a proof of debt regarding any claim they may

have against the Debtor, Companies Act, Sec. 139, and the Plaintiffs in the Kentucky Action have filed proofs of debt in the Debtor's Cayman Liquidation. Further, the Companies Act does not distinguish or otherwise prejudice the claims of local creditors from the claims of foreign creditors, such as the Debtor's U.S. creditors. Companies Act, Secs. 139, 140, 141 & 142. Accordingly, the holders of claims against the Debtor's estate are treated fairly and U.S. claimants are neither prejudiced nor inconvenienced by processing their claims in the Cayman Liquidation.

22. Third, the distribution of the estate in a liquidation scenario under the Companies Act is similar to the scheme under the U.S. Bankruptcy Code. The Companies Act, provides priority of payment to "preferred" and secured creditors, then payment of non-secured and non-preferred creditors in a *pari passu* basis, and finally to equity interests. Companies Act, Sec. 140.

23. Importantly, the relief sought is necessary to effectuate the purposes of chapter 15 of promoting the fair and efficient administration of the Debtor's foreign estate located in the Cayman Islands by centralizing the claims against the estate and distribution in the forum of the main foreign proceeding.

WHEREFORE, the Foreign Representatives request that the Court enter an order, substantially in the form of **Exhibit "A"**, granting this Motion and permit the Foreign Representatives to distribute the funds of Omega SP to the Cayman Islands.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all interested parties registered to receive notice via this Court's CM/ECF electronic notification system on October 31, 2022.

Dated: October 31, 2022

          Respectfully submitted,

          SEQUOR LAW, P.A.
          1111 Brickell Avenue, Suite 1250
          Miami, Florida 33131
          Telephone: (305) 372-8282
          Facsimile: (305) 372-8202
          Email:  ggrossman@sequorlaw.com
                  jmendoza@sequorlaw.com

By: */s/ Gregory S. Grossman*
     Gregory S. Grossman
     Florida Bar No. 896667
     Juan J. Mendoza
     Florida Bar No.: 113587

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via regular US mail to all participants who are not on the list to receive e-mail notice/service for this case as indicated on the service list on October 31, 2022.

By: */s/ Gregory S. Grossman*
     Gregory S. Grossman

# **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

PERFORMANCE INSURANCE COMPANY SPC      Chapter 15

    Debtor in a Foreign Proceeding.      Case No.: 21-12609-AJC
_____/

**ORDER GRANTING MOTION TO AUTHORIZE DISTRIBUTION OF
ESTATE FUNDS HELD IN THE UNITED STATES TO THE CAYMAN ISLANDS**

THIS CAUSE came before the Court on _____ ___, 2022, (the "Hearing") upon the Motion to Authorize the Distribution of Estate Funds Held in the United States to the Cayman Islands (the "Motion") [DE ___] filed by Kenneth Krys and Neil Dempsey (the "Foreign Representatives"), the Official Joint Liquidators of Performance Insurance Company SPC and ten

of its twelve segregated portfolios[1] (collectively, the "Debtor"). The Court has considered the Motion, the record, and arguments of counsel for the Foreign Representatives at the Hearing, the Court finds that the interests of the Debtor's U.S. creditors are sufficiently protected under the Debtor's Cayman Liquidation. Accordingly, it is

**ORDERED** that:

1. The Motion is GRANTED as set forth below.

2. The Foreign Representatives are authorized and entrusted with the distribution of the funds in the United States bank accounts of segregated portfolio Omega Insurance Company SP, to such accounts in the Cayman Islands as specified by the Foreign Representatives.

###

Submitted by:
Gregory S. Grossman, Esq.
Juan J. Mendoza, Esq.
SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131
ggrossman@sequorlaw.com
jmendoza@sequorlaw.com
Telephone: (305) 372-8282

(Juan J. Mendoza is directed to serve a copy of this order upon all interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order)

---

[1] The Debtor's segregated portfolios are: (i) Bottini Insurance SP; (ii) Gen 1 Insurance Company SP; (iii) Goldenstar Holdings Company SP; (iv) Greystone Insurance SP; (v) Hudson York Insurance Company SP; (vi) Omega Insurance Company SP; (vii) Performance 5 SP; (viii) Prewett Insurance Company SP; (ix) Smart Insure SP; (x) SSS Insurance SP; (xi) Sustainable Insurance Company SP; and (xii) Triangle RGK SP. These twelve segregated portfolios are hereinafter referred to as the "Segregated Portfolios." The Foreign Representatives are the Official Joint Liquidators for all segregated portfolios but not for Bottini Insurance SP and SSS Insurance SP.